UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRED MANESH,

    Plaintiff,

    v.

SUN MICROSYSTEMS,
a foreign corporation,

    Defendant.

Civil No. 05-30-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

    Fred Manesh (plaintiff), a former employee of defendant Sun Microsystems (defendant), asserts that his termination from employment with defendant violated state discrimination laws, under O.R.S. 659A.100 and O.R.S. 659A.030. Plaintiff also alleges a state law claim for wrongful discharge. This court has jurisdiction under 28 USC §§ 1332 and 1441.

    Defendant seeks summary judgment, arguing in part that plaintiff was terminated legitimately and that plaintiff fails to qualify as a disabled person. Plaintiff failed to address the merits of defendant's Motion for Summary Judgment, and instead argues that he should prevail

on a claim for retaliation. Plaintiff's Complaint advances no retaliation claim, and plaintiff's Motion for Leave to Amend the Complaint [63] to add a claim for retaliation was denied previously [67].

Oral argument on defendant's summary judgment motion was heard on December 4, 2006. For the following reasons, defendant's Motion for Summary Judgment [41] is granted.

**BACKGROUND**

Plaintiff began working for defendant in 1999 as an Engineering Technician. Julie Gonzalez began supervising plaintiff in February 2003. Gonzalez began to have problems with plaintiff's job performance shortly thereafter.

In June 2003 plaintiff filed a discrimination complaint with defendant's human resource complaint department. Plaintiff believed that Gonzalez had discriminated against him because of his national origin. Madlyn Workman, an employee relations case manager, was first to investigate plaintiff's complaint. She interviewed plaintiff, Gonzalez, and several of plaintiff's co-workers. Based on her interviews, Workman concluded that there was no inappropriate conduct directed at or about plaintiff.

Plaintiff appealed Workman's determination. A human resources manager reviewed Workman's information, findings, and conclusion and concluded that the evidence did not support plaintiff's complaint.

Plaintiff again appealed. Britt Sellin, defendant's manager of employee relations, reviewed the investigation file and spoke with Gonzalez and several of plaintiff's co-workers. During this time, plaintiff began sending various e-mails alleging that defendant's managers were discriminating against him.

Plaintiff's August 2003 performance review indicated that his performance met minimum requirements, but needed some improvement. Gonzalez noted that plaintiff had strong technical skills, but needed to improve his documentation accuracy and listening skills. Plaintiff disagreed with the review and refused to sign it. Previous performance reviews indicated similar problems with plaintiff's job performance. These reviews included notes such as "is not a good team player," "needs to improve his interpersonal skills, learn to work harmoniously and effectively with others," and "significant communication/teamwork problem earlier in the year." Memorandum in Support of Defendant's Motion for Summary Judgment (Def.'s Mem.) at 4.

In his 2003 Development Plan plaintiff noted that he expected to increase his "already impeccable technical skills and knowledge." Def.'s Mem. at 4-5. When asked to comment on obstacles to achieving his development plan, plaintiff wrote, "I will not allow anyone to overload me with so many projects that would cause me to rush and make minor paper work mistake (sic) which are insignificant." Def.'s Mem. at 5.

In August 2003 several of plaintiff's co-workers expressed concern about plaintiff's behavior, specifically that after plaintiff had complained he was unhappy with his performance review, they were afraid for their safety and Gonzalez's safety. Manager Peter Lehmann spoke to plaintiff about these concerns and explained that several co-workers were concerned that he might bring a gun to work and use it against them. Plaintiff admitted he had talked about guns at work previously. Lehmann instructed plaintiff not to speak about guns with co-workers and not to bring a gun to work.

On September 23, 2003, Sellin completed her investigation and concluded that plaintiff's discrimination complaints were unfounded. She reported these conclusions to plaintiff and

Lehmann the next day.  Plaintiff refused to attend a subsequent meeting with Sellin and Gonzalez, claiming that he was afraid of Gonzalez.  Sellin arranged for another human resources employee, Richard Johnson, to fly from Califonia to meet with plaintiff.  Gonzalez cancelled this meeting as well.

On September 26, 2003, plaintiff sent Sellin an e-mail saying that he had "been under tremendous mental anguish, pain, and suffering."  Def.'s Mem. at 7.  Plaintiff also noted that he was "starting to feel ill due to stress."  Def.'s Mem. at 7.  Plaintiff sent another e-mail to Lehmann, stating that he refused to work for him, Gonzalez, or David Perillo (Lehman's supervisor), and asserting that he had "had it with all of you."  Def.'s Mem. at 7-8.  Plaintiff also wrote, "thank you and please leave me alone.  I am having a nervous break down due to all your actions."  Def.'s Mem. at 8.  Defendant placed plaintiff on leave of absence that day.

Lehmann called plaintiff and told him that defendant still wanted him to meet with Johnson.  Plaintiff refused to speak with Johnson.  Johnson then investigated plaintiff's complaints.  He interviewed nine employees or former employees of defendant.  He was unable to substantiate any of plaintiff's allegations.

Workman sent plaintiff a letter on October 6, 2003, explaining Johnson's findings and informing him that he needed to complete a fitness-for-duty-exam before he could return to work.  Plaintiff saw a doctor on October 24, 2003.   This doctor observed that plaintiff seemed "mildly delusional in a paranoid sense" and his "judgment is also seriously impaired . . . evidenced by his unrealistic way of dealing with his difficulties in the workplace." Def.'s Mem. at 8.  He concluded that plaintiff was unfit to return to work.  Plaintiff visited a second doctor in December, 2003, who released him to return to work.

Plaintiff was scheduled to return to work on January 23, 2004. Lehmann told plaintiff that he, Gonzalez, Lehmann, and a Human Resources representative would meet to discuss expectations. Plaintiff arrived for the meeting, and Gonzalez presented plaintiff with an action plan designed to improve his performance. Plaintiff refused to sign the action plan. Plaintiff then began discussing his earlier discrimination complaint. Plaintiff asked to speak to the Human Resources representative, Kristen Aldretti, alone. During this time, Lehmann spoke with his supervisor, Dave Perillo, and they concluded that plaintiff could not successfully return to work. Lehmann obtained approval to terminate plaintiff's employment and then did so.

Plaintiff's Complaint alleges state discrimination claims under O.R.S. 659A.100 and O.R.S. 659A.030, as well as a state law claim for wrongful discharge. Defendant seeks summary judgment, arguing in part that plaintiff was terminated legitimately and that plaintiff fails to qualify as a disabled person.

## STANDARDS

### 1. Summary Judgment

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000)(citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and Co. of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005)(citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981)(citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party does have limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).

Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

However, the Ninth Circuit recognizes a high standard for granting summary judgment in employment discrimination cases. Courts should require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that is most appropriately conducted by the fact-finder, upon a full record. *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

2. **Disability Discrimination**

Oregon disability discrimination law is to be construed "to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities

Act," (ADA). O.R.S. 659A.139. Oregon courts look to the ADA to interpret the similar Oregon law. *Centennial School Dist. No. 28J v. Or. Bureau of Labor and Industries*, 10 P.3d 945, 953-54 (Or. App. 2000) (applying federal jurisprudence interpreting ADA definition of "disability" to Oregon law).

To make out a *prima facie* case of disability discrimination, a plaintiff must present sufficient evidence that he or she is a "disabled person." *Centennial School Dist. No. 28J*, 10 P.3d at 953. Oregon law defines an individual with a disability as someone who has (1) a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) a record of the impairment; or (3) is regarded as having an impairment. O.R.S. 659A.100(1)(a). Oregon law defines the term "substantially limits" to mean:

> (A) The impairment renders the individual unable to perform a major life activity that the average person in the general population can perform; or
>
> (B) The impairment significantly restricts the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.

O.R.S. 659A.100(2)(d). "Major life activity" includes but is not limited to "self-care, ambulation, communication, transportation, education, socialization, employment and ability to acquire rent or maintain property." O.R.S. 659A.11(2)(a).

### 3. Age and National Origin/Race Discrimination

Employment discrimination claims brought in federal court under O.R.S. Chapter 659A are analyzed under the same standard approach used to analyze disparate treatment claims under federal law. *Williams v. Fed. Ex. Corp.*, 211 F. Supp. 2d 1257, 1261 (D. Or. 2002). For claims of disparate treatment based on race, national origin, or age, a plaintiff must first present a *prima*

*facie* case of discrimination, which creates a presumption of discrimination. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996). The *prima facie* test for disparate treatment under O.R.S. 659A.030 is the same as the *prima facie* test required for a claim under its federal law counterpart. *Henderson v. Jantzen, Inc.*, 719 P.2d 1322, 1324 (Or. App. 1986) (expressly adopting for O.R.S. Chapter 659 claims the requirements set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

To establish a *prima facie* case of race or national origin discrimination, a plaintiff must demonstrate that: (1) plaintiff is a member of a protected class, (2) plaintiff was performing his or her job according to his employer's legitimate expectations, (3) plaintiff was subject to an adverse employment action, and (4) similarly situated persons outside of his or her protected class were treated more favorably. *Williams*, 211 F. Supp. 2d at 1262.

To establish a *prima facie* case of age discrimination, a plaintiff must satisfy the first three requirements above, and a fourth requirement is that plaintiff was replaced by a substantially younger person with equal or inferior qualifications. *Scott v. Sears, Roebuck & Co.*, 395 F. Supp. 2d 961, 973 (D. Or. 2005)

### 4. Wrongful Discharge

The general rule regarding employment at will in Oregon is that an employer may discharge an employee or an employee may quit at any time for any reason. *Delaney v. Taco Time Intern., Inc.*, 681 P.2d 114, 116 (Or. 1984). The tort of wrongful discharge is a narrow exception to this general rule. *See Sheets v. Knight*, 779 P.2d 1000, 1006-07 (Or. 1989). This tort "provides a remedy when an employee is discharged for fulfilling an important societal obligation or for exercising an employment-related right of public importance." *Estes v. Lewis &*

*Clark College*, 954 P.2d 792, 796 (Or. App. 1998).  To succeed on this claim, an employee must establish that the protected activity was a substantial factor in the motivation to discharge the employee.  *Id.* at 797.

## ANALYSIS

Defendant moves for summary judgment on all claims.  Defendant argues that plaintiff has not presented evidence to support his contention that he has experienced unlawful discrimination in his employment, and alternatively, that defendant had a legitimate non-discriminatory reason for firing plaintiff.  Defendant argues that plaintiff's wrongful discharge claim fails because plaintiff has no evidence to support his contention that the discharge was "wrongful."  Plaintiff does not respond to any of defendant's arguments.

### 1. Plaintiff's Disability Discrimination Claim

Plaintiff alleges that he was discriminated against in violation of O.R.S. 659A.100.  To advance his disability claim, plaintiff must show that he was a "qualified individual with a disability," that is, a person with a physical or mental impairment that substantially limits one or more of his major life activities.

There are no grounds to support plaintiff's assertions that he is qualified as disabled, or believed himself to be disabled, or was ever perceived to be substantially limited in a major life activity by defendant.  Moreover, plaintiff does not meet his burden of showing that defendant terminated him because of his disability.  *See Daoud v. Avamere Staffing, L.L.C.*, 336 F. Supp. 2d 1129, 1136-37 (D. Or. 2004) (holding that plaintiff must show that defendant discriminated against plaintiff because of plaintiff's disability).

### 2. Plaintiff's Age and Race/National Origin Discrimination Claims

Plaintiff alleges claims he was discriminated against in violation of O.R.S. Chapter 659A, on the basis of race/national origin and age.

Plaintiff's claims for age and race/national origin discrimination under O.R.S. 659A.030 fail because he cannot make the requisite *prima facie* showing. Plaintiff has not demonstrated that he was performing his job according to his employer's legitimate expectations. While plaintiff demonstrated strong technical skills, Gonzalez noted that plaintiff had problems with accurate documentation. His performance reviews also indicate that plaintiff consistently had difficulties working in a team and getting along with others. When confronted with these issues, plaintiff became hostile and refused to sign the August 2003 performance review. On his 2003 personal development plan, plaintiff noted that his documentation errors were "insignificant." Without evidence establishing satisfactory performance, plaintiff has not made a *prima facie* showing of unlawful discrimination.

Further, plaintiff has not shown that others were treated more favorably, or that he was replaced by a substantially younger person with equal or inferior qualifications. Plaintiff only offers his own assertions that others were treated more favorably, and offers no supporting evidence.

### 3. Plaintiff's Wrongful Discharge Claim

Plaintiff alleges he was terminated for pursuing rights of public importance, specifically the right to be free from illegal employment discrimination and the right to engage in concerted activity.

Plaintiff presents no evidence that he was terminated based on his participation in a protected activity (here, filing a discrimination complaint).  Plaintiff relies on his subjective belief that he was discharged for lodging an internal discrimination complaint with defendant, yet offers no evidence to support this inference.  Accordingly, his wrongful discharge claim fails. *See Estes*, 954 P.2d at 797 (holding that an employee must establish a causal connection between a protected activity and the employee's discharge).

**CONCLUSION**

Plaintiff fails to respond substantively to the arguments advanced by defendant supporting defendant's summary judgment motion.  Accordingly, the court concludes that defendant's Motion as to these claims is well-taken and defendant is entitled to summary judgment on the merits. For the foregoing reasons, Defendant's Motion for Summary Judgment [41] is granted.

IT IS SO ORDERED.

DATED this  8   day of December, 2006.

                                          /s/ ANCER L. HAGGERTY
                                            Ancer L. Haggerty
                                        United States District Judge